MARIE L. FIALA (CA BAR NO. 79676)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104-1715
Telephone: 415-772-1200
Facsimile: 415-772-7400
mfiala@sidley.com

**Counsel For Plaintiffs**

[ADDITIONAL PARTIES AND COUNSEL
SHOWN ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION, AMERICAN TRUCKING ASSOCIATIONS, THE CENTER FOR NORTH AMERICAN ENERGY SECURITY, and THE CONSUMER ENERGY ALLIANCE,**<br><br>Plaintiffs,<br><br>v.<br><br>**JAMES GOLDSTENE**, in his official capacity as Executive Officer of the California Air Resources Board; **MARY D. NICHOLS, DANIEL SPERLING, KEN YEAGER, DORENE D'ADAMO, BARBARA RIORDAN, JOHN R. BALMES, LYDIA H. KENNARD, SANDRA BERG, RON ROBERTS, JOHN G. TELLES,** and **RONALD O. LOVERIDGE**, in their official capacities as members of the California Air Resources Board; **ARNOLD SCHWARZENEGGER** in his official capacity as Governor of the State of California; and **EDMUND G. BROWN, JR.** in his official capacity as Attorney General of the State of California,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND** |

<u>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND**</u>

Come now Plaintiffs, National Petrochemical & Refiners Association (NPRA), and American Trucking Associations (ATA), the Center for North American Energy Security (CNAES), and the Consumer Energy Alliance (CEA) (collectively, Plaintiffs) by and through their attorneys, and state as follows:

## INTRODUCTION AND SUMMARY

1.      This is an action for declaratory, injunctive and other relief brought by Plaintiffs against James Goldstene, in his official capacity as the Executive Officer of the California Air Resources Board (CARB), and Mary D. Nichols, Daniel Sperling, Ken Yeager, Dorene D'Adamo, Barbara Riordan, John R. Balmes, Lydia H. Kennard, Sandra Berg, Ron Roberts, John G. Telles, and Ronald O. Loveridge, also in their official capacities as members of CARB, and California's Governor Arnold Schwarzenegger, and California's Attorney General, Edmund G. Brown, Jr., in their official capacities as Governor and Attorney General of California.

2.      Plaintiffs seek injunctive and declaratory relief enjoining the implementation and enforcement of the California Low Carbon Fuel Standard (LCFS), and declaring the LCFS unlawful under federal law.

3.      The LCFS is a California regulation designed to promote the local production of transportation fuels in California and to make it more difficult to import and use transportation fuels and fuel feedstocks in California that are produced outside of California.

4.      The LCFS violates the Commerce Clause of the United States Constitution.

5.      First, the LCFS violates the Commerce Clause because it directly regulates interstate and foreign commerce and extraterritorial conduct, including the extraction, production and transport of transportation fuels and fuel feedstocks outside of California.

6.      Second, the LCFS violates the Commerce Clause by imposing substantial burdens on interstate commerce that are clearly excessive in relation to the claimed local benefits.

7.      Third, the LCFS discriminates both on its face, and as applied, against transportation fuels and fuel feedstocks imported from outside of California with the intended effect of (i) promoting in-state production of transportation fuels, and (ii) "keep[ing] consumer dollars local by reducing the need to make fuel purchases from beyond [California's] borders."

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

8.    Finally, the LCFS violates the Supremacy Clause of the United States Constitution because it conflicts with the Energy Policy Act of 2005 (EPAct 2005), Pub. L. No. 109-58, 119 Stat. 594, the Energy Independence and Security Act of 2007 (EISA) §§ 201 *et seq.*, Pub. L. No. 110-140, 121 Stat. 1492, and the federal Renewable Fuels Standard.

## THE PARTIES

### Plaintiffs

9.    Plaintiff, NPRA, is a national trade association of more than 450 companies.  NPRA's members include virtually all United States  refiners and petrochemical manufacturers.  NPRA members supply consumers nationwide with a wide variety of products and services used daily in their homes and businesses.  These products include gasoline, diesel fuel and the chemicals that serve as "building blocks" in making diverse products, such as plastics, clothing, medicine and computers.  Its members have terminals in the Fresno area through which millions of barrels of gasoline, diesel, and ethanol are transferred annually.  Its members also own and brand multiple transportation fuel outlets in the Fresno area.

10.    Plaintiff, ATA, is a federation of motor carriers, state trucking associations, and national trucking conferences created to promote and protect the interests of the trucking industry. Directly, and through its affiliated organizations, ATA encompasses over 30,000 companies and every type and class of motor carrier operation.

11.    Plaintiff, CNAES, is a limited liability company, organized pursuant to the laws of the District of Columbia, for the purpose of promoting North American energy security through the responsible development of oil sands, oil shale, and similar so-called "non-conventional" energy resources in North America.  Members of CNAES include entities with a financial interest in such non-conventional energy resources and/or technologies for developing those resources.

12.    Plaintiff, CEA, is a nonprofit, nonpartisan organization with more than 125 affiliated organizations and tens of thousands of individual grassroots members that supports the thoughtful utilization of energy resources to help ensure improved domestic and global energy security and stable prices for consumers.  The mission of CEA is to expand the dialogue between the energy and consuming sectors to improve overall understanding of energy security and the thoughtful

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

development and utilization of energy resources to help create sound energy policy and maintain stable energy prices for consumers.  CEA seeks to help improve consumer understanding of the nation's energy security, including the need to properly balance our energy needs with environmental and conservation goals and continue efforts to diversify our energy resources.

13.     NPRA, ATA, CNAES, and CEA bring this suit on behalf of their members.  One or more of their members possesses standing to sue in its own right.

14.     The regulation of the interstate market for transportation fuel is of vital concern to Plaintiffs' members.

15.     Neither the claims asserted nor the relief sought in the Complaint requires the participation of any individual member of NPRA, ATA, CNAES, or CEA.

**Defendants**

16.     Defendant James Goldstene is the Executive Officer of the California Air Resources Board (CARB).  Defendant Goldstene (hereinafter, the "Executive Officer") is responsible, directly and through CARB, for the promulgation, implementation and, in substantial part, enforcement of the LCFS.  Defendant Goldstene is sued in his official capacity only.

17.     Defendants Mary D. Nichols, Daniel Sperling, Ken Yeager, Dorene D'Adamo, Barbara Riordan, John R. Balmes, Lydia H. Kennard, Sandra Berg, Ron Roberts, John G. Telles, and Ronald O. Loveridge, are members of CARB, and are sued in their official capacities only.

18.     Defendant Arnold Schwarzenegger is the Governor of the State of California. Defendant Schwarzenegger is responsible for the enforcement of the LCFS and is sued in his official capacity only.

19.     Defendant Edmund G. Brown, Jr. is the Attorney General of the State of California. Defendant Brown (hereinafter, the "Attorney General") is responsible for the enforcement of the LCFS and is sued in his official capacity only.

**JURISDICTION**

20.     Subject matter jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 because this case arises under the Constitution and laws of the United States.

21.     The Court has authority to enjoin enforcement of the LCFS under 42 U.S.C. § 1983,

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

and to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

22.    Venue is proper in this Court under 28 U.S.C. § 1391(b).  Defendants maintain their offices within the Eastern District of California and the events giving rise to the claims herein occurred within this judicial district.

## FACTUAL BACKGROUND

### The California Low Carbon Fuel Standard

23.    Governor Schwarzenegger authorized the Low Carbon Fuel Standard (LCFS) by Executive Order S-01-07 (Jan. 18, 2007), which calls for a ten percent reduction in the carbon intensity of gasoline and diesel fuel by 2020.

24.    Governor Schwarzenegger's White Paper on the LCFS asserts that the LCFS is designed to "[g]row California's clean energy industry" and "[r]educe California's dependence on imported oil and keep more money in the state."  Office of the Governor, *The Role of a Low Carbon Fuel Standard in Reducing Greenhouse Gas Emissions and Protecting Our Economy* at 6-7 (Jan. 8, 2007).

25.    Defendants have stated that the LCFS is designed to "stimulate the production and use of alternative, low-carbon fuels in California."

26.    On June 21, 2007, CARB identified the LCFS as one of a set of proposed discrete early action measures pursuant to the California Global Warming Solutions Act of 2006.

27.    In December 2008, CARB approved the Climate Action Scoping Plan, which includes the LCFS as a discrete early action measure.

28.    On April 23, 2009, CARB adopted an initial version of the LCFS, recognizing that additional work would be needed to complete and finalize the regulation.

29.    On November 25, 2009, CARB submitted the LCFS regulation to the California Office of Administrative Law ("OAL").

30.    On January 12, 2010, the OAL reviewed and approved the LCFS.  The LCFS became effective on the same day when it was filed with the Secretary of State.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

**Required Reductions in "Carbon Intensity"**

31.    The LCFS calls for a reduction in the "carbon intensity" of gasoline and diesel fuel by 2020.  LCFS § 95482, Tables 1–2.  The LCFS requires fuel providers (refiners, importers and blenders of fuel) to reduce, by 2020, the average "carbon intensity" of the fuels they sell in California by 10%.  *Id.*

32.    The LCFS imposes reporting requirements beginning in 2010.  Under the LCFS, beginning on May 31, 2010, all regulated parties must submit quarterly progress reports to the Executive Officer.  Each regulated party's report must include, for each transportation fuel, (i) the type of fuel, (ii) whether the fuel is blended, (iii) the number of fuelstocks, (iv) the types of blendstocks, (v) Renewable Identification Numbers (RINs), (vi) blendstock feedstock, (vii) feedstock origin, (viii) production process, (ix) amount of each blendstock, (x) the carbon intensity of the fuel or blendstock, (xi) the amount of each fuel used as gasoline replacement, and (xii) the amount of each fuel used as diesel fuel replacement.  LCFS § 95484(c)(3).

33.    In addition, for gasoline and diesel fuel, each regulated party must report (i) "[t]he carbon intensity value of each blendstock" calculated pursuant to LCFS § 95486 and (ii) the volume of each blendstock during the compliance period.  LCFS § 95484(c)(3)(A).

34.    Reductions in carbon intensity are mandated to begin in 2011, and the required reductions increase each year through 2020.  LCFS § 95482, Tables 1–2.

35.    Providers of gasoline fuel must reduce the average carbon intensity of their fuels from the current average of 95.86 gCO2e/MJ to 86.27 gCO2e/MJ by 2020.  LCFS  § 95486(b), Table 6; LCFS  § 95482, Table 1.

36.    Similarly, diesel fuel providers must reduce the carbon intensity of their fuels from the current average of 94.71 gCO2e/MJ to 85.24 gCO2e/MJ in 2020.  LCFS  § 95486(b), Table 7; LCFS § 95482, Table 2.

37.    CARB has stated that fuel providers may meet the LCFS's requirements by (i) "blend[ing] low-carbon ethanol into gasoline, or renewable diesel fuel in diesel fuel," or (ii) "purchas[ing] credits generated by other fuel providers to offset any accumulated deficits from their own production," such as "credits generated from another fuel provider that has banked credits from

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

using electricity in a plug-in hybrid vehicle."

**The LCFS Directly Regulates Interstate Commerce and Conduct Outside California**

38.     The LCFS requires that "[t]o ensure that low-carbon fuels that are produced outside of California are actually the source fuels used in the State, regulated parties must establish physical pathway evidence for transportation fuels and fuel feedstocks subject to the LCFS" including a "demonstration that there exists a physical pathway by which the transportation fuels and fuel feedstocks are expected to arrive in California."

39.     The LCFS assigns various "carbon intensity" values to transportation fuels and fuel feedstocks used in California based upon a "life-cycle" analysis, which includes estimates of greenhouse gas (GHG) emissions "related to the full fuel lifecycle, including all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of finished fuel to the ultimate consumer." LCFS § 95481(a)(28).

40.     The LCFS defines "carbon intensity" as "the amount of lifecycle greenhouse gas emissions, per unit of energy of fuel delivered, expressed in grams of carbon dioxide equivalent per megajoule (gCO2E/MJ)."  LCFS § 95481(a)(11).

41.     The LCFS defines "lifecycle greenhouse gas emissions" as "the aggregate quantity of greenhouse gas emissions (including direct emissions and significant indirect emissions such as significant emissions from land use changes), as determined by the Executive Officer, related to the full fuel lifecycle, including all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of the finished fuel to the ultimate consumer, where the mass values for all greenhouse gases are adjusted to account for their relative global warming potential."  LCFS § 95481(a)(28).

42.     Under the LCFS, the "carbon intensity" of a transportation fuel is not only a measure of the GHGs emitted when a transportation fuel is used in California, but also an estimate of GHGs emitted when the transportation fuel is produced or extracted, refined and transported to California.

43.     Because "carbon intensity" is designed to account not only for a fuel's *physical characteristics*, but also the energy necessary to bring the transportation fuel to market in California, chemically identical fuels are assigned different carbon intensities under the LCFS.  LCFS  §

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

95486(b), Tables 6–7.

44.　　CARB classes transportation fuels based on their raw materials, geographic origin, manufacturing process, and the power source used to refine them.　LCFS § 95486(b), Tables 6–7. CARB calls each class of such fuels a "fuel pathway."　LCFS § 95486(b).

45.　　By regulating the "fuel pathway" of transportation fuels – *i.e.*, the manner in which transportation fuels are produced and ultimately reach the California market – the LCFS directly regulates interstate commerce and conduct occurring outside of California.

### The LCFS Burdens Interstate and Foreign Commerce

46.　　CARB has recognized that the LCFS will encourage regulated parties to engage in "fuel shuffling"— *i.e.*, shipping fuels and feedstocks that have been assigned high carbon intensities to other States and countries while shipping fuels with lower carbon intensities to California.

47.　　The shuffling of billions of gallons of transportation fuels and fuel feedstocks in and out of California will impose significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce.

48.　　CARB has admitted that, because no other states have adopted a similar standard, "fuel producers are free to ship lower-carbon-intensity fuels to areas with such standards, while shipping higher-carbon-intensity fuels elsewhere."　CARB, *California's Low Carbon Fuel Standard: An Update on the California Air Resources Board's Low Carbon Fuel Standard Program* (Oct. 2009) at 1.

49.　　According to CARB, "[t]he end result of this fuel 'shuffling' process is little or no net change in fuel carbon-intensity on a global scale."　*Id.*

50.　　In fact, the "fuel shuffling" promoted by the LCFS likely will lead to an overall increase in GHG emissions because it will mean redirecting fuels and feedstocks destined for California to other states through less efficient and redundant supply lines.　*Id.; see also* CARB, *Final Statement of Reasons* (Dec. 2009) at 234–35.

51.　　The burdens imposed by the LCFS on the interstate market for transportation fuels and fuel feedstocks in California are clearly excessive when measured against the putative local benefits of the LCFS in California.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

**Discrimination Against Out-of-State Fuels**

52.    The LCFS assigns different carbon intensities to physically identical in-state and out-of-state fuels, even when the fuels are produced by the same processes.  LCFS  § 95486(b), Tables 6-7.  The "carbon intensity" assigned by CARB to a transportation fuel is based not solely on the amount of greenhouse gases ("GHGs") emitted in California, but also on CARB's assessment of conduct that occurs entirely outside of California.

53.    CARB admits that it has assigned certain transportation fuels produced in California lower carbon intensities than physically identical fuels produced through the same production process outside of California in light of "shorter transportation distances and lower carbon intensity electricity sources."

54.    For example, CARB has assigned "Ethanol from Corn; California; Dry Mill; Dry DGS [Distillers Grains Plus Solubles], NG [Natural Gas]" a carbon intensity of 88.90 gCO2E/MJ. CARB has assigned the same fuel produced outside of California in the Midwest ("Ethanol from Corn; Midwest; Dry Mill; Dry DGS, NG") with a carbon intensity of 98.40 gCO2E/MJ, more than 10% greater than its in-state California counterpart.  LCFS  § 95486(b), Table 6.

55.    Likewise, CARB has assigned "Ethanol from Corn; California; Dry Mill; Wet DGS; NG" with a carbon intensity of 80.70 gCO2E/MJ.  The same fuel produced outside California in the Midwest ("Ethanol from Corn; Midwest; Dry Mill; Wet DGS") is assigned a carbon intensity of 90.10 gCO2E/MJ, more than 10% greater than its in-state California counterpart.  LCFS  § 95486(b), Table 6.

56.    The LCFS requires regulated parties to reduce the average "carbon intensity" of their transportation fuels sold in California by, for example, blending gasoline with various or different forms of ethanol which are assigned a lower carbon intensity than that of the current baseline gasoline.

57.    By way of example, by 2011, regulated parties must reduce the average carbon intensity of their products to 0.25% below the current baseline.  The gasoline baseline, 95.86 gCO2E/MJ, is a mixture of California Reformulated Gasoline Blendstock for Oxygenate Blending and 10% ethanol ("80% Midwest Average; 20% California; Dry Mill; Wet DGS; NG").  Under the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

LCFS, regulated parties that sell gasoline may be able to *reduce* the "carbon intensity" of their fuel, for example, by reducing their use of Midwestern ethanol and replacing it with a California ethanol from corn  that uses the "Dry Mill; Dry DGS; NG" production process.  This ethanol is assigned a "carbon intensity" of 88.90 gCO2E/MJ, and thus has a lower "carbon intensity" than the baseline.

58.    In contrast, a regulated party would *increase* the carbon intensity of its gasoline if it instead replaced current ethanol with the same corn ethanol from the "Midwest," which is created by the same production process, but for which CARB has assigned a markedly higher "carbon intensity" value of 98.40 gCO2E/MJ, and which has a greater carbon intensity than the current baseline.

59.    On its face, the LCFS creates an incentive for regulated parties to use California corn ethanol instead of physically identical corn ethanol produced outside of California in the Midwest. The LCFS creates regulatory disincentives for using corn ethanol produced in the Midwest.

60.    Similarly, although "credits" generated under the LCFS can be exported to other carbon-permitting programs outside California, credits cannot be imported into California from other States.  *See* LCFS § 95485(c)(1)(C), (2)(A).

61.    The LCFS also creates a barrier to the sale of transportation fuel derived from oil extracted by certain processes, and in certain regions, including Canada, labeling it "High Carbon Intensity Crude Oil (HCICO)" LCFS § 95486(b)(2).  LCFS  § 95486(b), Table 6.  Upon information and belief, the barrier to HCICO oil is designed, as a practical matter, to make it economically infeasible to import HCICO to California.

62.    The LCFS allows the use of HCICO in two situations: 1) if "the regulated party" "propose[s] a new pathway for its HCICO and obtain[s] approval from the Executive Officer for the resulting pathway's carbon intensity;" or 2) if "the GHG emissions from the fuel's crude production and transport steps are subject to control measures, such as carbon capture-and-sequestration (CCS) or other methods, which reduce the crude oil's production and transport carbon-intensity value to 15.00 grams CO2e/MJ or less, as determined by the Executive Officer."  LCFS § 95486(b)(2)(A)(2)(a)(ii).

63.    These differences in "carbon intensity" set forth in the LCFS discriminate against

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

identical out-of-state fuels and are designed to promote the use of California fuels over their out-of-state counterparts.  By assigning lower carbon intensities to California fuels, the LCFS discourages the use of the same fuels produced outside of California.

64. The discrimination inherent in the LCFS is designed to provide a competitive advantage to local economic interests.

65. The Executive Order authorizing the LCFS states that it will "provide economic development opportunities" by encouraging production of alternative fuels.  Executive Order S-01-07.

66. According to CARB, as a result of the LCFS, "over 25 new biofuel facilities will have to be built and will create more than 3,000 new jobs, mostly in the state's [California's] rural areas," and this "[p]roduction of fuels within the state will also keep consumer dollars local by reducing the need to make fuel purchases from beyond its borders."  CARB, *California Adopts Low Carbon Fuel Standard* (Apr. 23, 2009).

67. The LCFS promotes economic balkanization by creating a transportation fuel standard that favors transportation fuels and fuel feedstocks produced in California and creates barriers to the import of identical transportation fuels and feedstocks produced outside California.

68. By discriminating against interstate and foreign commerce, Defendants are imposing significant burdens on importers who would bring fuel into the State and encouraging retaliation from other States.

69. Moreover, this discrimination is not justified by any local benefit, because, as California admits, it will not decrease, and will likely increase global emissions of GHGs.  CARB, *California's Low Carbon Fuel Standard: An Update on the California Air Resources Board's Low Carbon Fuel Standard Program* (Oct. 2009) at 1.

**Regulation of Other States' Energy Policies and**

**Discrimination Against States with Different Energy Policies**

70. The LCFS also assigns high-carbon intensities to out-of-state transportation fuels when they are produced using different energy sources than those available in California.

71. For example, "Ethanol from Corn; Midwest; Wet Mill, 100% NG" is assigned a

11

carbon intensity of 94.52 gCO2e/MJ, "Ethanol from Corn; Midwest; Wet Mill, 60% NG, 40% coal" is assigned a carbon intensity of 105.10 gCO2e/MJ, and "Ethanol from Corn; Midwest; Wet Mill, 100% coal" is assigned a carbon intensity of 120.99 gCO2e/MJ.  LCFS  § 95486(b), Table 6.

72.     The LCFS imposes a significant barrier to the use of corn ethanol produced in these manners because producers and importers are required to meet a standard of 86.27 gCO2e/MJ by 2020, and the carbon intensity for each of these corn ethanol fuels is far in excess of that requirement.

73.     The LCFS creates a significant barrier to the importation of ethanol from the Midwest because regulated entities that intend to import ethanol from these States will need to purchase vast quantities of other fuels that California has assigned very low carbon intensities or to purchase "credits" accumulated by other entities subject to the LCFS.

74.     No part of California's regulation can be salvaged by severance because the LCFS is designed, as a whole, to regulate interstate commerce directly.  The LCFS is designed to regulate each transportation fuel's "fuel pathway," *i.e.*, the manner in which transportation fuels are produced outside California, their movement in interstate commerce to California, and the manner in which they ultimately reach the California market.

### The LCFS Conflicts with Federal Law

75.     The federal Renewable Fuels Standard program (RFS) is mandated by the Energy Policy Act of 2005 (EPAct 2005), Pub. L. No. 109-58, 119 Stat. 594, and modified by the Energy Independence and Security Act of 2007 (EISA) §§ 201 *et seq.*, Pub. L. No. 110-140, 121 Stat. 1492.

76.     Federal law requires "that transportation fuel sold or introduced into commerce in the United States . . . on an annual average basis, contains at least the applicable volume of renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel" mandated by the EISA.  EISA § 202(a)(1), 42 U.S.C. § 7545(o)(2).

77.     The categories of advanced biofuel, cellulosic biofuel, and biomass-based diesel are defined in terms of their "lifecycle greenhouse gas emissions, as determined by the Administrator" of the United States Environmental Protection Agency.

78.     The EISA expressly exempts certain existing ethanol biorefineries (that were either in

production or under construction on the date the EISA was enacted) from the EISA's requirements for reduced GHG emissions.  42 U.S.C. § 7545(o)(2)(A)(i).

79.　The EISA also provides that EPA's regulations may not "restrict geographic areas in which renewable fuel may be used."  42 U.S.C. §§ 7545(o)(2)(A)(i), (o)(2)(A)(iii)(II)(aa).

80.　One of the purposes for the EISA is to ensure a continued market for ethanol and other renewable fuels nationwide.  42 U.S.C. § 7545(o)(2)(B).

81.　The LCFS conflicts with the EISA by penalizing the continued production of certain renewable fuels in existing biorefineries.  *See* 42 U.S.C. § 7545(o)(2)(A)(i).

82.　The LCFS is designed to close California as a market for certain renewable fuels produced in *existing* biorefineries and thus frustrates and stands as an obstacle to the congressional purpose of ensuring a continued market nationwide for certain renewable fuels and meeting the applicable volume requirements for certain renewable fuels.  Indeed, CARB has stated that the LCFS will require "over 25 *new* biofuel facilities . . . in the state's [California's] rural areas."  CARB, *California Adopts Low Carbon Fuel Standard* (Apr. 23, 2009) (emphasis added).

83.　The conflict between the LCFS and federal law is particularly acute because California is the largest single state market for ethanol in the United States.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violation of the Commerce Clause**

84.　The prior paragraphs of the Complaint are incorporated by reference.

85.　The LCFS violates the Commerce Clause of the United States Constitution by directly regulating interstate and foreign commerce and purporting to regulate conduct that occurs in other States and Nations.

86.　The LCFS violates the Commerce Clause by regulating, on its face and in its practical effect, the channels of interstate and foreign commerce and the use of these channels of interstate and foreign commerce.

87.　By regulating the "fuel pathway" of transportation fuels – *i.e.*, the manner in which transportation fuels are produced and ultimately reach the California market – LCFS impermissibly

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

penalizes producers and importers based upon the manner in which their transportation fuels are produced and the manner in which they move in interstate and foreign commerce.

88.     The LCFS imposes significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce.

89.     By design and in practical effect, the LCFS impermissibly regulates conduct occurring outside of California by making it more difficult to market and sell transportation fuels based upon where the fuels are produced, the manner in which they are produced, and the manner in which they reach the California market.

90.     Defendants are purporting to act within the scope of their authority under state law in enforcing and implementing the LCFS.

91.     Defendants are liable to Plaintiffs for proper redress under 42 U.S.C. § 1983 because the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured by the Commerce Clause of the United States Constitution.

92.     Plaintiffs have no adequate remedy at law.

**SECOND CLAIM**

**Violation of the Commerce Clause**

93.     The prior paragraphs of the Complaint are incorporated by reference.

94.     The LCFS violates the Commerce Clause by imposing unreasonable burdens on interstate and foreign commerce that are clearly excessive when measured against the purported local benefits of the LCFS.  The LCFS imposes significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce.

95.     For example, the LCFS will encourage regulated parties to ship fuels and feedstocks that have been assigned high carbon intensities to other States and countries while shipping fuels with lower carbon intensities to California.

96.     The shuffling of billions of gallons of transportation fuels and fuel feedstocks in and out of California will impose significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce.

97.     The net effect of this fuel shuffling will be an overall increase in GHG emissions

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

because fuels and feedstocks destined for California will be directed to other States through less efficient and redundant supply lines.

98.    The LCFS is not justified by any valid public welfare, consumer protection, or pro-competitive purpose unrelated to economic protectionism.

99.    Defendants are purporting to act within the scope of their authority under state law in enforcing and implementing the LCFS.

100.    The Defendants are liable to Plaintiffs for proper redress under 42 U.S.C. § 1983 because the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured by the Commerce Clause of the United States Constitution.

101.    Plaintiffs have no adequate remedy at law.

## THIRD CLAIM

### Violation of the Commerce Clause

102.    The prior paragraphs of the Complaint are incorporated by reference.

103.    The LCFS violates the Commerce Clause of the United States Constitution by discriminating against transportation fuels produced in other States and other countries.

104.    The LCFS treats chemically identical fuels and fuel feedstocks differently based, in part, on where they are produced.  By assigning lower carbon intensities to California fuels and higher carbon intensities to fuels from outside California, the LCFS encourages the use of fuels produced in California as compared to chemically identical fuels produced outside of California.

105.    The discrimination inherent in the LCFS is designed to provide an unfair competitive advantage to local economic interests and to promote the use of California fuels in California.

106.    The LCFS impose significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce.

107.    The LCFS is not justified by any valid public welfare, consumer protection, or pro-competitive purpose unrelated to economic protectionism.

108.    Defendants are purporting to act within the scope of their authority under state law in enforcing and implementing the LCFS.

109.    Defendants are liable to Plaintiffs for proper redress under 42 U.S.C. § 1983 because

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured by the Commerce Clause of the United States Constitution.

110.    Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM

### Violation of the Supremacy Clause

111.    The prior paragraphs are incorporated by reference.

112.    The LCFS conflicts with and stands as an obstacle to the purposes and goals of the Energy Policy Act of 2005 (EPAct 2005), Pub. L. No. 109-58, 119 Stat. 594, the Energy Independence and Security Act of 2007 (EISA) §§ 201 *et seq*., Pub. L. No. 110-140, 121 Stat. 1492, and the federal Renewable Fuels Standard.

113.    The LCFS is designed to close California as a market for certain renewable fuels produced in existing refineries necessary to meet national renewable fuel standards set by Congress and implemented by EPA in the laws above, and thus frustrates and stands as an obstacle to the congressional purpose of ensuring a continued market nationwide for this corn ethanol.

114.    The LCFS imposes significant burdens on Plaintiffs' members in connection with their conduct of interstate commerce and their compliance with the federal laws and regulations.

115.    The LCFS conflicts with federal standards and regulations set forth above regarding the suitability of using certain renewable fuels produced outside California to meet the federal mandates within the borders of California.

116.    The LCFS is unconstitutional under the Supremacy Clause because it conflicts with and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the federal laws and regulations.

117.    Defendants are purporting to act within the scope of their authority under state law in enforcing and implementing the LCFS.

118.    Defendants are liable to Plaintiffs for proper redress under 42 U.S.C. § 1983 because the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured by the Supremacy Clause of the United States Constitution.

119.    Plaintiffs have no adequate remedy at law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A declaratory judgment, pursuant to 28 U.S.C. § 2201, that the LCFS violates the United States Constitution and is unenforceable;

B.    A preliminary and permanent injunction enjoining the Defendants from implementing or enforcing the LCFS;

C.    An order awarding Plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.    Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated:  February 2, 2010                    SIDLEY AUSTIN LLP


                                            By:  /s/ Marie L. Fiala
                                                 Marie L. Fiala

                                                 *Counsel for Plaintiffs*


[ADDITIONAL COUNSEL OF RECORD]

Roger R. Martella, Jr. (DC Bar No. 976771)
Paul J. Zidlicky (DC Bar No. 450196)
James W. Coleman (DC Bar No. 986626)
*(Pro Hac Vice Applications Pending)*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  202-736-8000
Facsimile:  202-736-8711
rmartella@sidley.com
pzidlicky@sidley.com
jcoleman@sidley.com

*Counsel for Plaintiffs*

17
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

Kurt E. Blase (DC Bar No. 288779)
Blase Law Group
879 N. Kentucky St.
Arlington, VA  22205
Telephone:  703-525-3161
Facsimile:  703-525-3161
kurt@blasegroup.com

*Counsel for Plaintiff Center for
North American Energy Security*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND